UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN C. KRAMER and SANDRA E.
KRAMER, husband and wife

                     Plaintiffs,

  -against-                                      COMPLAINT

PENSKE TRUCK LEASING, CO., L.P.          21 CV _____
PTL, GP, LLC; MAXON LIFT CORP.
MORGAN TRUCK BODY COMPANY

                     Defendants.              JURY TRIAL DEMANDED

------------------------------------------------------------x

## COMPLAINT

Plaintiffs Stephen C. Kramer and Sandra E. Kramer, by the undersigned counsel, the Law Offices of Joseph Monaco, P.C., allege for the Complaint as follows:

## JURISDICTION AND VENUE

1. Defendant PENSKE TRUCK LEASING, CO., L.P. ("Penske") is a citizen of Delaware as corporate entity organized under the laws of the State of Delaware with its principal place of business in Reading, Pennsylvania.

2. Defendant PTL, GP, LLC ("PTL") is citizen of Delaware as a corporate entity organized under the laws of the State of Delaware with its principal place of business in Reading, Pennsylvania.

3. Defendant MAXON LIFT CORP ("Maxon") is a citizen of California as a corporate entity organized under the laws of the State of California with its principal place of business in Santa Fe Springs, California.

4. Defendant MORGAN TRUCK BODY, LLC ("Morgan") is a citizen of Delaware

as a corporate entity organized under the laws of the State of Delaware with its principal place of business in Morgantown, Pennsylvania.

5. At all times relevant herein, the Plaintiffs, STEPHEN C. KRAMER ("Kramer") and SANDRA E. KRAMER ("Consortium Plaintiff") were and remain adult individuals who were married to one another and who were domiciled in and otherwise citizens of the Commonwealth of Pennsylvania.

6. At all times relevant herein, the Defendants regularly conducted business in and derived significant revenue in the State of New York and therefore availed itself of the New York marketplace and have had significant contacts with the State of New York.

7. At all times relevant herein, the defendants sold products in the United States and specifically in the State of New York.

8. At all times relevant herein, the defendants derived significant revenue from the sale of products in the United States and specifically in the State of New York.

9. Jurisdiction of this action is based on 28 U.S.C. § 1332.

10. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) because the events giving rise to the complaint occurred in the Southern District of New York.

11. Plaintiff sustained injures that exceed the minimum jurisdictional limitations for this Court to exercise subject matter jurisdiction – including injuries requiring multiple spine surgeries.

## OPERATIVE FACTS

12. On October 18, 2018, Plaintiff Kramer was an employee of Petfood Experts, Inc., located in Lancaster, Pennsylvania.

13. On that date, Plaintiff Kramer, in the scope of his employment, was making a

delivery of certain pet related products in New York and parked his delivery vehicle at or near 654 Hudson Street in New York, New York for that purpose.

14. In making his subject delivery, Plaintiff Kramer utilized a vehicle provided to him by his employer who leased the vehicle from Defendant Penske with Penske and/or Defendant PTL being responsible for the subject vehicle's maintenance, inspection and upkeep.

15. The delivery vehicle utilized by Plaintiff Kramer on the date of the subject incident was equipped with a hydraulic lift gate manufactured by Defendant Maxon and installed by Defendant Morgan.

16. At the time of the subject incident, Plaintiff Kramer was attempting to utilize the subject lift gate when the lift gate failed and collapsed, causing Plaintiff Kramer to fall violently to the ground and suffer serious and ongoing injuries.

17. The subject hydraulic lift gate was a Maxon lift gate model GPTLR-44 with serial number 1608361065 (hereinafter, the "Lift gate").

18. The subject Lift gate was installed on the delivery vehicle utilized by Plaintiff Kramer on the date of the subject incident with such vehicle being identified by Indiana License Plate # 2443185 and VIN # H4S57041 (hereinafter, the "Vehicle").

19. The initial cause of the Lift gate collapse was the failure of a hydraulic hose and/or fitting that should have been detected, repaired and prevented by proper maintenance and inspection by Defendants Penske and/or PTL.

20. The subject Lift gate should have had a pressurized valve or other fail safe mechanism that prevented the collapse of the Lift gate after the hose and fitting failure.

21. Defendant Maxon designed and/or manufactured the Lift gate or caused the same.

22. Defendant Morgan sold and/or installed the Lift gate.

23.     Defendants Maxon and/or Morgan marketed the Lift gate.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## NEGLIGENCE AGAINST DEFENDANTS PENSKE AND PTL

24.     Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 23 of the Complaint as though fully alleged herein.

25.     Defendants Penske and/or PTL were responsible for the inspection, maintenance and repair of the Vehicle and its components, including the Lift Gate.

26.     These Defendants had a duty to use reasonable care in the performance of their duties related to the inspection, maintenance and repair of the Vehicle and its components, including the Lift Gate.

27.     At all times relevant hereto, Defendant Penske and/or PTL performed all relevant maintenance, inspection, repair and related actions and inactions by and through its employees, agents, assigns or other chosen actors for whom they are responsible.

28.     Defendants Penske and/or PTL did negligently perform the actions related to inspection, repair and maintenance of the Vehicle, including the Lift gate.

29.     Defendants Penske and/or PTL were further negligence in failing to have or enforce adequate policies and/or procedures related to the inspection, maintenance and repair of the Vehicle and Lift gate.

30.     These Defendants' complained of negligence caused a risk of foreseeable harm to Plaintiff Kramer and did in fact cause harm in the form of injuries and related losses in an amount in excess of all jurisdictional limits of any lower courts.

31.     As a result of these Defendant's complained of negligence, action and inaction, Plaintiff Kramer was seriously and permanently injured.

32.     The complained of events and Plaintiff Kramer's injuries and losses occurred

through no fault, negligence, or contribution of his own.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### STRICT LIABILITY AGAINST DEFENDANTS MAXON AND MORGAN

33. Defendants Maxon and Morgan are responsible for allegations of products liability and/or negligence relating to the product, including manufacturing defects, design, warnings, components, guarding and/or safety devices and installation.

34. The subject Lift gate was defectively designed, manufactured and/or installed.

35. These Defendants are responsible for the Lift gate's defective design, manufacture and/or installation.

36. These Defendants are responsible in strict products liability for Plaintiff Kramer's injuries and losses.

37. Defendants were negligent with respect to the manufacture, sale, design, inspection, service, and/or installation of the subject Lift gate.

38. Defendants breached express and implied warranties owed to the Plaintiff Kramer with respect to the manufacture, sale, design, inspection, and installation of the subject Lift gate.

39. The Lift gate was defective and unreasonably dangerous to the ultimate users or consumers when designed, tested, maintained, assembled, distributed, manufactured, inspected, sold and placed into the stream of commerce by these Defendants in the following ways:

   a. The subject Lift gate failed to operate, as an ordinary consumer/user would expect;

   b. The subject Lift gate was designed, assembled, sourced, imported, manufactured, distributed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition such that the subject Lift gate had an

      unreasonable propensity to fall from the upright position without warning upon the failure of a hydraulic component;

c. The subject Lift gate was designed, assembled, manufactured, distributed, sold, installed and/or supplied in an unsafe, unreasonably dangerous and defective condition;

d. The subject Lift gate was defective in its design, manufacture, assembly, and warnings, in that it failed to operate as marketed and advertised, and failed to alert users to the hazardous conditions described herein;

e. The subject Lift gate was defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert users regarding the hazardous conditions described herein.

f. The Lift gate was improperly designed as it failed to provide protection to an operator and/or passerby of the Lift gate unexpectedly falling.

g. The Lift gate lacked safety devices designed to stop/arrest the unexpected falling of the Lift gate.

h. The Lift gate lacked mechanisms to adequately monitor hydraulic fluid level and/or pressure so as to lock the Lift gate in position in the event fluid and/or pressure levels change.

I. The Lift gate lacked a mechanical means of securing the Lift gate in the upright/stowed position in the event of a hydraulic failure.

j. The Lift gate lacked warnings to alert people of the dangerousness of the Lift gate, including but not limited to unexpected falling of the same.

40. At the time of the subject incident, the subject Lift gate was in substantially the same condition as when designed, tested, maintained, assembled, sourced, distributed, manufactured, inspected, sold, installed and placed into the stream of commerce by these Defendants

41. For the reasons set forth above the subject Lift gate was unreasonably dangerous to foreseeable users including Plaintiff Kramer.

42. As a direct and proximate cause of the foregoing acts and/or omissions of the these Defendants, Plaintiff Kramer sustained serious and permanent bodily injuries resulting in pain and suffering, permanent impairment, disability, mental anguish, inconvenience, loss of the enjoyment of life, expense of medical care and treatment, expense of hospitalization, lost wages in the past and the loss of ability to earn wages in the future and/or otherwise in an amount that exceeds the minimum jurisdictional requirements for this Court to exercise jurisdiction over this matter.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### AGAINST DEFENDANTS MAXON AND MORGAN

43. Plaintiffs repeat and realleges all of the allegations contained in paragraphs 1 through 42 of the Complaint as though fully alleged herein.

44. Prior to the complained of incident, these Defendants placed and/or permitted the Lift gate to be placed into operation/service without properly designed and/or functioning safety mechanism(s) and/or design(s).

45. Prior to the complained of incident, these Defendants placed and/or permitted the Lift gate to be placed into operation/service in an unsafe condition.

46. Defendants were responsible for the safe use of the Lift gate

47. Defendants failed to properly warn and/or notify the customer that safety devices missing and/or not functioning properly on the Lift gate prior to the subject incident

48. Defendants failed to properly warn and/or notify the customers and/or Plaintiff Kramer of the dangers of the product.

49. Defendants knew or in the exercise of due care should have known that the subject Lift gate would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users, including Plaintiff.

50. Defendants were under a duty to properly and adequately design, test, maintain, assemble, source, import, distribute, manufacture, inspect, sell, distribute and install the subject Lift gate in a reasonably safe condition as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with it, including Plaintiff Kramer.

51. Defendants breached the duty owed to Plaintiff Kramer by negligently designing, testing, maintaining, assembling, distributing, manufacturing, inspecting, selling, distributing, and installing the subject Lift gate when it was not in a reasonably safe condition for foreseeable use, as follows:

    a. The subject Lift gate failed to operate, as an ordinary consumer/user would expect;

    b. The subject Lift gate was designed, assembled, sourced, imported, manufactured, distributed, sold, supplied and/or installed in an unsafe, unreasonably dangerous and defective condition such that the subject Lift gate had an unreasonable propensity to fall from the upright position without warning and/or activation;

    c.    The subject Lift gate was designed, assembled, sourced, imported, manufactured, distributed, sold, supplied and/or installed in an unsafe, unreasonably dangerous and defective condition;

    d.    The subject Lift gate was defective in its design, manufacture, assembly, and warnings, in that it failed to operate as marketed and advertised, and failed to alert users to the hazardous conditions described herein;

    e.    The subject Lift gate was defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert users regarding the hazardous conditions described herein.

    f.    The Lift gate was improperly designed as it failed to provide protection to an operator and/or passerby of the Lift gate unexpectedly falling.

    g.    The Lift gate lacked safety devices designed to stop/arrest the falling of the lift.

    h.    The Lift gate lacked mechanisms to adequately monitor hydraulic fluid level and/or pressure so as to lock the lift in position in the event fluid and/or pressure levels change.

    I.    The Lift gate lacked a mechanical means of securing the lift in the upright/stowed position in the event of a hydraulic failure.

    j.    The Lift gate lacked warnings in the area of the hopper to alert people of the dangerousness of the Lift gate, including but not limited to unexpected falling of the same

52.    Defendants were negligent.

53. Plaintiff's severe injuries were caused by and/or a result of the foregoing.

54. As a direct and proximate cause of the foregoing acts and/or omissions of the defendant, Plaintiff Kramer sustained serious and permanent bodily injuries resulting in pain and suffering, permanent impairment, disability, mental anguish, inconvenience, loss of the enjoyment of life, expense of medical care and treatment, expense of hospitalization, lost wages in the past and the loss of ability to earn wages in the future and/or otherwise in an amount that exceeds the minimum jurisdictional requirements for this Court to exercise jurisdiction over this matter.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
### AGAINST DEFENDANTS MAXON AND MORGAN

55. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1-52 as if fully set forth herein.

56. Defendants designed, manufactured, assembled, distributed, inspected, tested, sold and/or installed the Lift gate.

57. Defendants expressly warranted that the Lift gate was safe for ordinary use when used in compliance with the instructions provided.

58. Defendant's affirmations regarding the safety of its product formed a basis of the bargain for Plaintiff Kramer without which the Plaintiff would not have utilized or relied upon the Lift gate

59. The Lift gate did not conform to the Defendants' affirmations regarding safety.

60. As a direct and proximate result of Defendants' breaches of express warranties, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the

enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## AGAINST DEFENDANTS MAXON AND MORGAN

61. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1-58 as if fully set forth herein.

62. Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed  sold and/or installed the Lift gate.

63. Defendants impliedly warranted that the Lift gate was merchantable, fit for the ordinary purpose for which it was sold or used, was of at least  average quality as to pass without objection in the trade, and conformed to Defendants' own affirmations regarding the Lift gate's safety features and overall safe condition.

64. Defendants breached their implied warranty of merchantability, as the product did not conform to the Defendants' affirmations regarding the safety features and overall safe condition of the Lift gate, the Lift gate was not fit for the ordinary purpose for which it was sold or used, and was not of at least average quality so as to pass without objection in the trade.

65. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE
## AGAINST DEFENDANTS MAXON AND MORGAN

66. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1-65 as if fully set forth herein.

67. Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed, sold and/or installed the subject Lift gate.

68. In doing so, Defendants, through their agents, servants, employees, and apparent agents, acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiff's employer, plaintiff and co-workers would put the Lift gate to use and knew or should have known of the particular purpose to which the Plaintiff's employer, plaintiff and co-workers would put the product to use. Defendants impliedly warranted that the product would be fit for such particular purpose.

69. Defendants breached its implied warranty of fitness for a particular purpose, as the Lift gate did not conform to the Defendant's affirmations regarding its product being fit for such particular purpose. The Lift gate's malfunctioning safety features and overall unsafe condition rendered it unfit for that purpose.

70. As a direct and proximate result of Defendants' breaches of the implied warranty of fitness for a particular purpose, Plaintiff Kramer suffered severely painful and disfiguring injuries, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
## FAILURE TO WARN
## AGAINST DEFENDANTS MAXON AND MORGAN

71. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1-70 as if fully set forth herein.

72. Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed, sold and/or installed the Lift gate.

73. On the date of the incident, Plaintiff used the Lift gate in the manner intended and/or foreseeable intended, when the Lift gate failed and/or otherwise caused injury to the Plaintiff.

74. Upon information and belief, the Lift gate was manufactured in a defective manner, defectively designed and/or failed to have adequate and proper warnings or instructions; it was not safe to be used for the purposes intended; and/or it was inherently and/or unreasonably dangerous.

75. Defendants knew or should have known of the dangerous nature of the Lift gate by virtue of their business, and/or knew or should have known of the need to provide adequate warnings concerning the use of the Lift gate.

76. Defendants had a duty to provide reasonable warning of the danger involved in the use of the Lift gate and failed to provide the public, including Plaintiff Kramer, notice of the danger involved.

77. As a direct and proximate result of the foregoing, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and

medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

### AS AND FOR A EIGHTH CLAIM FOR RELIEF
### NEGLIGENCE - AGAINST ALL DEFENDANTS

78. Plaintiff realleges and readopts the allegations set forth in Paragraphs 1-77 as if fully set forth herein.

79. Defendants had a duty of reasonable care to design, manufacture, inspect, test, market, distribute, install and/or sell non-defective Lift gate's that are reasonably safe for their intended use. Defendants also had a duty to adequately warn of dangers presented by the product's design. These duties applied to the subject Lift gate

80. Defendants knew, or in the existence of ordinary care, should have known, that the subject Lift gate was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used.

81. Defendants knew or in the exercise of ordinary care should have known of the means of designing, manufacturing, and marketing the subject Lift gate such that the type of incident and resulting injuries and damages as described herein would have been prevented. Defendants had actual or constructive knowledge of the means of designing a Lift gate that would not be inadequate and dangerous and notwithstanding this knowledge, Defendants failed to adequately design, equip, install and/or manufacture the subject Lift gate.

82. Defendants negligently failed to give adequate or proper warnings or instructions and failed to make appropriate post-marketing efforts to prevent known incidents, such as the one complained of herein.

83. Defendants owned Plaintiff Kramer, as well as the public at large, the duty of reasonable care in designing, manufacturing, testing, inspecting, marketing ad installing the subject Lift gate.

84. Defendants failed to prudently design, manufacture, test, inspect, market, sell and install the subject Lift gate and failed to include a reasonable and safer alternative to the subject defective condition.

85. Defendants failed to properly and appropriately install, maintain, repair, service and inspect the subject Lift gate.

86. As a direct and proximate result of the Defendants' negligence, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

### AS AND FOR A EIGHTH CLAIM FOR RELIEF - CONSORTIUM AGAINST ALL DEFENDANTS

87. Plaintiffs reallege and readopt the allegations set forth in Paragraphs 1-86 as if fully set forth herein.

88. Kramer and Consortium Plaintiff were married to one another on the date of the incident complained of herein and remain married presently.

89. As a result of the injuries and losses suffered by Plaintiff Kramer, Consortium Plaintiff has been deprived of her husband's comfort, society, aid, affection, consortium, and services.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, together with interest and costs of suit.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally in a monetary sum far exceeding the jurisdictional limitations of this court, including not limited to compensatory damages, together with interest, costs and disbursements as provided by law.

<u>Plaintiffs demand a trial by jury on all counts.</u>

Dated:   New York, New York
         August 24, 2021

Regards,

THE LAW OFFICES
JOSEPH D. MONACO, P.C.

By: *Joseph D. Monaco, Esq.*
Joseph D. Monaco, III
7 Penn Plaza - Suite 1606
New York, New York 10001
(212) 486-4244
jmonaco@monaco-law.com

Local Counsel For:
SAVOCA JUSTICE, LLC
1525 Oregon Pike, Suite 501
Lancaster, PA 17601
(717) 519-0805